## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | |
|---|---|
| In re:<br><br>**TANYA L. JONES,**<br><br>              **Debtor.** | **Case No. 16-19257-TJC**<br>**(Chapter 7)** |
| **JOHN P. FITZGERALD, III,**<br>**ACTING UNITED STATES TRUSTEE**<br>**for REGION 4,**<br>**6305 Ivy Lane, Suite 600**<br>**Greenbelt, MD 20770,**<br><br>              **Plaintiff,**<br><br>**v.**<br><br>**TANYA L. JONES,**<br>**14405 WOODMORE OAKS COURT**<br>**Bowie, MD 20721,**<br><br>              **Defendant.** | **Adversary Proc. No.:** |

### COMPLAINT TO REVOKE DISCHARGE OF DEBTOR

Plaintiff John P. Fitzgerald, III, the Acting United States Trustee for Region 4 ("United States Trustee"), by and through undersigned counsel, hereby files this Complaint pursuant to 11 U.S.C. § 727(d)(1) seeking to revoke the discharge of the Defendant.   In support of this Complaint, the United States Trustee states as follows:

### Jurisdiction and Venue

1.     The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a) and 11 U.S.C. § 727.   This is a core proceeding under 28 U.S.C. §

1

157(b)(2)(J).

2.    Venue in this Court is proper pursuant to 28 U.S.C. § 1409(a).

3.    The United States Trustee has standing to file this complaint under 11 U.S.C.

§§ 307, 727(d), and Fed. R. Bankr. P. 4004.   Pursuant to Local Bankr. Rule 7012-1(b), the

United States Trustee hereby consents to the entry of final orders or judgments by the Bankruptcy

Court in this adversary proceeding.

4.    The order of discharge was entered in this case on January 25, 2017.

5.    The last date to seek revocation of discharge is January 24, 2018.   This

Complaint is timely filed.

## The Parties

6.    The Plaintiff is the United States Trustee for Region 4.

7.    The Defendant is the Chapter 7 Debtor herein.   At the time she filed her petition,

she stated that she lived in Bowie, MD.

## Factual Background Common to All Counts

8.    The allegations contained in paragraphs 1 - 7 are incorporated herein by reference.

9.    Tanya L. Jones (the "Defendant" or "Debtor") initiated this case by filing, through

counsel, a voluntary petition for relief under the reorganization provisions available to individuals

with regular income through Chapter 13 of the United States Bankruptcy Code on July 11, 2016

("Petition Date").

10.    On October 3, 2016, the Court denied confirmation of the Debtor's proposed

Chapter 13 Plan without leave to amend.

11.    By separate order on October 3, 2016, the Court converted this case to a liquidation

under Chapter 7.

12.     Michael G. Wolff was appointed to serve as Chapter 7 Trustee ("Chapter 7 Trustee").

13.     The Defendant filed her Summary of Schedules and Schedules A through J on July 27, 2016 (ECF 11).

14.     The Defendant signed and attached a Declaration to the Schedules, in which she stated under penalty of perjury that the information on her schedules was true and correct (ECF 11 at p. 21).

15.     The Defendant filed her Statement of Financial Affairs ("SOFA") on July 27, 2016 (ECF 12).

16.     On the SOFA, the Defendant declared under penalty of perjury that the information on the SOFA was true and correct (ECF 12 at p. 7).

17.     The Chapter 7 Trustee conducted and concluded the first meeting of creditors on November 1, 2016 ("341 Meeting").

18.     At the 341 Meeting, the Defendant testified that she had listed all of her assets on her Schedules and SOFA.

19.     At the 341 Meeting, the Defendant testified that she had listed all of her liabilities on her Schedules and SOFA.

20.     At the 341 Meeting, the Defendant testified that her Schedules and SOFA were true, accurate and complete and that she had nothing to add to or change in these pleadings.

21.     The Defendant never amended her Schedules and SOFA.

22.     On January 25, 2017, the Defendant received her discharge (ECF 47).

3

23.     In response to Question no. 3 on Schedule A/B, which asks debtors, "Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?", including "Cars, vans, trucks, tractors, sport utility vehicles, motorcycles", the Defendant answered, "No." (ECF 11 at p. 4).

24.     In response to Question no. 6 on Schedule A/B, which asks debtors to list all "Household goods and furnishings," the Defendant identified "furnishing" with a value of $3,000 (ECF 11 at p. 4).

25.     In response to Question no. 7 on Schedule A/B, which asks debtors to list all "Electronics", including "Televisions and radios, audio, video, stereo and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games," the Defendant answered, "No." (ECF 11 at p. 4).

26.     In response to Question no. 8 on Schedule A/B, which asks debtors to list all "Collectibles", including "Antiques and figurines, paintings, prints or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles," the Defendant answered, "No." (ECF 11 at p. 5).

27.     In response to Question no. 9 on Schedule A/B, which asks debtors to list all "Equipment for sports and hobbies", including "Sports, photographic, exercise and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments", the Defendant answered, "No."   (ECF 11 at p. 5).

28.     In response to Question no. 12 on Schedule A/B, which asks debtors to list all "Jewelry", including "Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver", the Defendant answered, "No." (ECF 11 at p. 5).

29.     In response to Question no. 17 on Schedule A/B, which asks debtors to list all "Deposits of money", including "Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions", the Defendant answered, "Navy FCU."   (ECF 11 at p. 5-6).

30.     In response to Question no. 23 on the SOFA, which asks debtors, "Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone", the Defendant answered, "No." (ECF 12 at p. 5.)

31.      In response to Question no. 27 on the SOFA, which asks debtors, "Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business? –A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time [;] A member of a limited liability company (LLC) or limited liability partnership (LLP) [;] A partner in a partnership[;] An officer, director, or managing executive of a corporation[;] An owner of at least 5% of the voting or equity securities of a corporation", the Defendant answered, "Yes. Previously had interest transportati[sic] business; closed."

32.     Before the Debtor received her discharge in this case, the Chapter 7 Trustee obtained approval from the Court to employ Patricia Frostbutter ("Ms. Frostbutter") as the real estate agent for the estate.

33.     The Chapter 7 Trustee had entered into an agreement with the secured lender to sell real property owned by the Defendant in Bowie that served as her residence (the "Home").

34.     The Defendant testified at the 341 Meeting that she owned the Home jointly with her mother, who had not filed for bankruptcy relief.

35.     Although there was no equity in the Home, the secured lender had agreed to carve

out a percentage of any sales proceeds (the "Carve-Out") to return to the Chapter 7 Trustee for distribution to creditors.

36.     The agreement between the secured lender and the Chapter 7 Trustee contained various deadlines that the Chapter 7 Trustee had to meet in order to receive the Carve-Out.

37.     At first the Debtor stated that she would surrender the Home and cooperate in the sales process.

38.     However, the Defendant did not cooperate.

39.     Ultimately, the Chapter 7 Trustee filed a Motion to Compel the Debtor's Cooperation.

40.     The Motion, which was filed post-discharge, was granted.

41.     After the Motion was granted, Ms. Frostbutter inspected the Home.

42.     She found that the Home was exquisitely furnished and had musical instruments, audio-video equipment, and other items of personal property that are appropriate for a house that had been purchased for one million dollars.

43.     The Home contained, among other items, a piano, a movie-theater with a ceiling projector, wide-screen and multiple lounge-style chairs, a piano, and large chandeliers.

44.     The Home also had a four-car garage that contained multiple motor vehicles, including, but not limited to, a BMW and a Range Rover.

45.     Ms. Frostbutter took pictures of numerous items in the Home.

46.     There continued to be litigation in connection with the Home.   In May 2017, the Chapter 7 Trustee initiated an adversary proceeding through his "Complaint to Sell Property of the Estate Free and Clear of Interest of Non-Debtor Co-Owner (the "363 Complaint") so that he could

6

sell the House free and clear of the Debtor's mother's interest.

47.     The day before a pre-trial conference was held on the 363 Complaint, the Debtor's mother, LaVern Jenkins, ("Mrs. Jenkins"), filed her Voluntary Petition for Relief under Chapter 13, which petition was docketed as Case No. 17-18023-WIL.

48.     Like the Defendant, Mrs. Jenkins identified a minimal amount of personal property on her Schedules and SOFA.

49.     However, on her Schedule A/B, Mrs. Jenkins identified a checking account that she owned with the Defendant.   This checking account was never disclosed on the Defendant's schedules and SOFA.

50.     On or about August 17, 2017, Ms. Frostbutter reported that an agent for a prospective buyer had toured the Home and reported that items that had appeared in the marketing pictures were not present at the Home.   Specifically, it was reported that fans and chandeliers had been removed and that there was exposed wiring where those fixtures had originally been placed.

51.     Several days later, Ms. Frostbutter again contacted the Chapter 7 Trustee and advised that there appeared to be additional items missing from the Home.

52.     Ms. Frostbutter also sent pictures of the interior of the Home to the Chapter 7 Trustee.

53.     In September 2017, the Chapter 7 Trustee advised the United States Trustee of the existence and subsequent removal of this personal property.

54.     Thus, the United States Trustee learned of the existence of the property and its removal after the Defendant had received her discharge.

**55.**     At no time during the bankruptcy case did the Debtor amend her schedules or

SOFA or otherwise disclose the significant personal property that was located at the Home or the bank account.

## COUNT I

### Revocation of Discharge (11 U.S.C. § 727(d)(1); 727(a)(2))

56.     The allegations contained in paragraphs 1 - 55 are realleged and incorporated herein by reference.

57.     Pursuant to 11 U.S.C. § 727(d)(1), "[o]n request of the trustee, a creditor, or the United States Trustee, and after notice and a hearing, the Court shall revoke a discharge granted under subsection (a) of this section if such discharge was obtained through the fraud of the Debtor and the requesting party did not know of such fraud until the granting of the discharge."

58.     For purposes of Section 727(d)(1), "proof of conduct by a debtor in violation of Section 727(a)(2) . . . is sufficient to establish that the discharge was obtained by fraud."   *In re Faruque,* Case No. 07-13375-SSM, 2009 WL 2211210 at *4 (Bankr. E.D. Va., July 20, 2009).

59.     Section 727(a)(2) of the Bankruptcy Code provides that a debtor is not entitled to a discharge if he, "with the intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed . . .(A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition."   11 U.S.C. § 727(a)(2).

60.     On the Petition Date, the Defendant owned or controlled for others various items of personal property (including fixtures) that were located in the Home and other personal property (including a checking account).

8

61.     The Defendant concealed the personal property by failing to disclose it in her Schedules and SOFA and by denying its existence during the 341 Meeting.

62.     These items of personal property were property of the Defendant prior to the Petition Date and property of the bankruptcy estate after the Petition Date.

63.     The Defendant concealed these assets with the intent to hinder, delay and defraud creditors and the officers of her bankruptcy estate, including the Chapter 7 Trustee.

## COUNT II

### Revocation of Discharge (11 U.S.C. § 727(d)(1); 727(a)(4))

64.     The allegations contained in paragraphs 1 - 63 are realleged and incorporated herein by reference.

65.     Pursuant to 11 U.S.C. § 727(d)(1), "[o]n request of the trustee, a creditor, or the United States Trustee, and after notice and a hearing, the Court shall revoke a discharge granted under subsection (a) of this section if such discharge was obtained through the fraud of the Debtor and the requesting party did not know of such fraud until the granting of the discharge."

66.     For purposes of Section 727(d)(1), "proof of conduct by a debtor in violation of Section 727 … (a)(4) is sufficient to establish that the discharge was obtained by fraud."   *In re Faruque*, Case No. 07-13375-SSM, 2009 WL 2211210 at *4 (Bankr. E.D. Va., July 20, 2009).

67.     Section 727(a)(4) of the Bankruptcy Code, in turn, provides that a debtor is not entitled to a discharge if he "knowingly and fraudulently, in connection with the case . . . made a false oath or account."

68.     The Defendant made false oaths and accounts in connection with the case by failing to disclose personal property that she owned, including personal property located at the

Home, and a bank account, and by affirmatively testifying at the 341 Meeting that the Schedules and SOFA were true and correct.

69.     The Defendant made the false oaths knowingly and fraudulently and for the purpose of hiding assets from the Chapter 7 Trustee and her creditors.

70.     These misrepresentations are material and the Chapter 7 Trustee relied upon them in administering the bankruptcy estate.

71.     The Defendant's material misrepresentations constitute fraud sufficient to revoke the Defendant's discharge.

72.     The Defendant has obtained a discharge through fraud, which was not discovered by the United States Trustee until after the grant of discharge, and, thus, the Defendant's discharge should be revoked under 11 U.S.C. § 727(d)(1).

WHEREFORE, for the foregoing reasons, the United States Trustee respectfully requests that the Court enter its Order revoking the Defendant's discharge under 11 U.S.C. § 727 and awarding such other and further relief as may be necessary and appropriate.

Dated:   January 8, 2018                    **JOHN P. FITZGERALD, III**
                                            Acting United States Trustee for Region 4
                                            By Counsel:


                                            */s/ Jeanne M. Crouse*
                                            Jeanne M. Crouse, Bar No. 05329
                                            6305 Ivy Lane, Suite 600
                                            Greenbelt, MD   20770
                                            Tel: (301) 344-6219
                                            Fax: (301) 344-8431
                                            Email: jeanne.m.crouse@usdoj.gov